Smith *v.* Cahoon.

(*) SMITH *versus* CAHOON *&* al. *and trustee.*

In a suit against joint defendants, a person holding goods, effects or credits of *either* of them may be held as trustee.

One, who had received personal property from the principal defendant, giving therefor his obligation to pay a stipulated price or return the property within a prescribed period, is chargeable as trustee, although, when served with the process, the time allowed him for making the election had not expired, and though, in fact, the election had not then been made

In such a case, there is the same liability of the trustee, though the property was but an undivided part of an indivisible article.

An indebtment to the principal defendant as *surviving partner* will subject the debtor as trustee, though the suit is against the defendant in his *individual character*, unless it appears either that the fund is needed for the partnership debts, or that the partnership creditors have taken measures to secure its appropriation.

EXCEPTIONS from *Nisi Prius,* SHEPLEY, C. J., presiding. ON TRUSTEE'S DISCLOSURE.

The case being called in its order, *Fox,* for the plaintiff, suggested that it was against a firm which consisted of four persons, of whom several were dormant partners; while the trustee has testified to his belief that, when the dealings were had, concerning which he is called to disclose, the firm consisted of two persons only. The counsel contended that the ascertainment of this disputed fact is material to a right decision, and that it could be had only through the verdict of a jury. He therefore proposed that this question be sent to the jury, before any adjudication upon the disclosure.

SHEPLEY, C. J.— There is no necessity that the principal action be tried before the trustee's disclosure be adjudicated upon. If not trustee, he may be now discharged. If

adjudged trustee, no final judgment can be entered against him, unless the plaintiff recover against the principal defendant. There is, on the disclosure, a legal question to be decided. Under the new law, the principal case stands on the jury docket. The case on the disclosure is here. When the liability of the trustee is ascertained, this part of the case goes back to the county docket, for the jury trial.

From the disclosure the following facts appeared:—

There was in Portland a business co-partnership, under the name of Turner & Cahoon. George Turner and James B. Cahoon were members of the firm. Turner died. Cahoon was the executor of his will, and continued to carry on business in the same company name. On October 3, 1851, the trustee received of Cahoon, *as surviving partner* of the firm of Turner & Cahoon, a steam boiler and fixtures, valued at $700, for which he gave his obligation to pay said Cahoon, by the name of Turner & Cahoon, seven hundred dollars in one year, or reconvey to them the said engine boiler and fixtures.

On October 4, 1851, the trustee received of the *executor* of Turner's will, a conveyance of three-fourths of two steam ferry boats, with coal and slabs for the use of the same, and gave therefor an obligation in the following form:—

"In consideration of the estate of the late George Turner having sold me three-fourths of the steamer Elizabeth, three-fourths of the steamer Boston, 38 cords of slabs and 225 tons of coal, I hereby agree to pay said estate or order twelve thousand and two dollars in one year, or reconvey said boats, slabs and coal, deducting what slabs and coal may be used in running the boats. On the same day, Oct. 4, 1851, the trustee received from Cahoon, as *surviving partner* of the firm of Turner & Cahoon, a conveyance of the other quarter of said boats, slabs and coal, amounting to $3998," for which the trustee gave an obligation to pay in a year or return the property.

In this part of the disclosure, the trustee states that " the said firm, while it existed, was composed, as he ever under-

stood, and has no doubt, of George Turner and James B. Cahoon."

This action was brought, on Nov. 19, 1851, against "the goods and estate, which were of George Turner, in the hands and possession of James B. Cahoon as his executor and trustee under the last will and testament of said George Turner, and also against James B. Cahoon, George W. Turner, Joseph E. Turner and Henry M. Turner, co-partners with the said Cahoon, as executor and trustee aforesaid, under the name and style of Turner & Cahoon." It was a trustee writ, and was served on this trustee on the same Nov. 19, 1851.

Cahoon soon afterwards resigned his trust as executor of George Turner's will, and an administrator *de bonis non* was appointed. Immediately afterwards, on December 2, 1851, this trustee transferred the three-fourths of the steamboats, slabs and coal, to the said administrator, who received the same and cancelled the obligation which the trustee had given therefor. On the same December 2, 1851, the trustee, *at Cahoon's request*, transferred to the administrator the other fourth of the same property, and also the steam boiler and fixtures, and received back the obligations, (cancelled,) which he had given therefor.

On December 16, 1851, the estate of Turner was represented insolvent, and commissioners of insolvency were duly appointed.

As the estate of Turner was thus under process of insolvency, the plaintiff withdrew all claim to hold the trustee on account of the three-fourths, of which the conveyance had been made by Cahoon as *executor*.

In relation to the other quarter, the Judge ruled that the trustee was chargeable, and to that ruling the trustee excepted.

*Fessenden & Deblois*, for the trustee.

The trustee's disclosure fully dislodges all imputation of fraud. The estate of George Turner being under process of insolvency, the plaintiff sets up no claim arising from the

trade between his *executor* and this trustee. But the plaintiff claims to charge the trustee by reason of the arrangement made by him with Cahoon as *surviving partner*, respecting the steam boiler and the one quarter of the steamboats, slabs and coal. The trade as sworn to by the trustee, and as is evidenced by the written contract, was not an absolute purchase of the articles. It was *conditional, contingent, dependent* upon an election subsequently to be made by the trustee, whether to consider it a purchase or not. When the service upon the trustee was made, the time for electing had not expired, and the election had not been made. And when it was subsequently made, it showed that there never was a purchase.

No one can be held as trustee, except upon a promise absolutely to pay money or to deliver other property. R. S., c. 119, § 63; *Davis* v. *Ham*, 3 Mass. 33; *Frothingham* v. *Haley*, 3 Mass. 68; *Willard* v. *Sheafe*, 4 Mass. 235. In *Thorndike* v. *DeWolf*, 6 Pick. 120, it is settled, that an uncertainty arising from the contract, whether the trustee will ever be indebted, makes the liability a contingent one, upon which he cannot be charged in a trustee suit. *Wentworth* v. *Whittemore*, 1 Mass. 471; *Randlett* v. *Jordan*, 3 Greenl. 47; *Chase* v. *Bradley*, 17 Maine, 89; *Badlam* v. *Tucker*, 1 Pick. 400.

This case comes perfectly within the definition of a contingency, as protected in *Dwinel* v. *Stone*, 30 Maine, 384.

Neither did the trustee's possession of the articles subject him to this process. For, until the year for making the election had elapsed, he had a perfect right to return, a right with which the vendor could not interfere. *Giles* v. *Bradley*, 2 Johns. Cases, 253.

Should the trustee be here charged, he is deprived of a valuable right, that of returning the property. This right he was authorized to secure and did secure by the contract, and no person, in any form of process, can impair it.

The articles were undivided and indivisible. If required, by the decision in this suit, to deliver the one quarter, it

cannot be done without a delivery of the other three quarters, upon which the plaintiff admits he has no claim.

There is also another ground, which we consider fatal to the plaintiff's claim against the trustee.

The firm of Turner & Cahoon consisted only of George Turner, deceased, and Cahoon. This is sufficiently shown by the disclosure. *Ormsby* v. *Anson,* 21 Maine, 23. The suit is against another firm. With that firm the trustee had no dealings. The only person of whom, under any circumstances, he could be charged as trustee, is the surviving partner of the late firm of Turner & Cahoon, J. B. Cahoon. The defendants in this suit, as appears from the writ, are said to be Cahoon, not as surviving partner, and the three sons of Geo. Turner. These sons never were partners in the firm. Cahoon was the only partner, and yet even he is not sued as surviving partner.

The contract, however otherwise construed, was not made by the trustee with the three Turners; they had nothing to do with it. To hold the trustee, he must either owe the principal defendants, or must have in his hands or possession the property of the principal defendants.

*Fox,* for the plaintiff.

TENNEY, J. — The declaration in the writ is upon paper bearing the name of "Turner & Cahoon," a firm alleged to consist of the defendants, who are James B. Cahoon, George W. Turner, Joseph E. Turner and Henry M. Turner, co-partners with said James B. Cahoon, as executor and trustee under the last will and testament of George Turner.

According to the disclosure of Pickett, it appears that he made a conditional contract, on Oct. 4, 1851, with some one acting for the estate of George Turner, for three-fourths of certain property described, and on the same day another contract with James B. Cahoon, surviving partner of Turner & Cahoon, for the other fourth part of the same property, and took the property into his possession. On the

preceding day he purchased certain other property of James B. Cahoon, surviving partner of Turner & Cahoon, and took possession of that also. He was bound to pay the stipulated price of the property to the estate of George Turner, and to James B. Cahoon in one year, unless within that time he should elect to re-convey the property. Before the expiration of the year, and before he had elected to re-convey the property, service of this writ was made upon him. Within the year, and before disclosure was made, Pickett did re-convey the property, the portion belonging to the estate of George Turner to his administrator *de bonis non* with the will annexed, and the residue to James B. Cahoon, the surviving partner of the firm of Turner & Cahoon.

It is not contended that Pickett can be holden as the trustee for the part of the property, or the price thereof, which was that of George Turner's estate. *Martin* v. *Abbott,* 1 Greenl. 333. But the controversy relates to the transaction touching the property, which was purchased by the supposed trustee of James B. Cahoon, surviving partner of the firm of Turner & Cahoon.

Pickett must be presumed to know with whom he made his contracts, and when he states that he made a contract with Cahoon *as surviving partner of the firm of Turner & Cahoon,* it necessarily implies, that one of that firm had deceased, and consequently, that it was dissolved, and that such firm was not, and could not be identical with the firm consisting of the defendants, and of James B. Cahoon as executor and trustee under the last will and testament of George Turner, in the name of "Turner & Cahoon."

The first ground on which the trustee claims to be discharged is, that the "money or other thing," supposed to be due from him to the principal defendant, was not due absolutely at the time of the service of the writ upon him, but depended upon a contingency. R. S., c. 119, § 63.

At the time of the service of the writ, Pickett held in his hands the consideration of his contract with the surviving

partner of the late firm of Turner & Cahoon. By that contract he had his election to restore the property purchased, within a time not then expired, and thereby discharge his obligations to pay the stipulated price in money. He had either goods *or* credits in his hands. It was not uncertain, whether he had received absolutely the consideration of his contract, nor whether he was absolutely bound to fulfil that contract, by a return of the property received, or pay its agreed equivalent; but the manner in which he should discharge it was dependent upon his choice. This is not the contingency referred to, in the statute cited for the trustee. And in the cases relied upon in his behalf, the facts were such as to leave it uncertain, whether any goods, effects or credits were in the hands of the supposed trustee at the time he was served with the process. In this case it was otherwise. The right to decide in which of the two modes provided, he would fulfil his agreement, did not leave his liability in any degree contingent, and he cannot with propriety contend, that he was not the trustee of the late firm of Turner & Cahoon. He had the power to signify his election to return the property, in which case, he would hold the property subject to the trustee process, in the same manner that he would have done, had he been bound absolutely to return the property within the time specified in the contract.

Pickett is summoned as the trustee of a firm named in the writ, to which he was not indebted; nor had he in his hands their property. But he was liable to James B. Cahoon, one of the principal defendants, as surviving partner of the late firm of Turner & Cahoon. The plaintiffs as creditors of the principal defendants were entitled to the property in his hands, or the sum due from him therefor, so far as it belonged to James B. Cahoon in his individual capacity, provided it was not needed for the payment of the debts due from the firm of Turner & Cahoon.

It does not appear from the case, that the creditors of that firm have taken any measures to secure this fund for

such a purpose. Certain cases have been referred to, as supporting the doctrine contended for by the trustee, that it must be shown affirmatively, that there are not outstanding liabilities of that firm, sufficient to absorb all the property belonging to it, before any part can be applied to the debt of an individual member thereof. But in the case of *Whitney* v. *Monroe & trustees*, 19 Maine, 42, the Court hold otherwise. It is said in the opinion, "if they [the partnership creditors] would claim and assert any such superior right, it was easy for them to have done so, by suits against both, summoning the same trustees. The Court would then have been called upon to determine who had the better title to the fund;" and the trustee was charged with the portion which was due from the trustees to the principal defendant, as a member of the firm. On the authority of this case, the trustee was properly charged.

*Exceptions overruled.*

WELLS, HOWARD and APPLETON, J. J., concurred.

---

NOTE. — When making his disclosure, an interrogatory was propounded to the trustee, which he declined to answer.

The plaintiff thereupon applied to the Court for an order upon the trustee to answer.

PER CURIAM. — On interlocutory questions of this character, the Court has no power to act. There is no statute or rule of practice which prescribes what interrogatories shall be propounded, or what shall be answered.

In such cases, the trustee, in refusing to answer, acts at his peril.